UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Crim. No. 15cr 10104 |
| v. | ) | |
| | ) | Violation:  18 USC §§ 1623, 1503 |
| ROBERT FITZPATRICK, | ) | (Perjury and Obstruction of Justice) |
| | ) | |
| Defendant. | ) | |

## INDICTMENT

THE UNITED STATES GRAND JURY, in and for the District of Massachusetts, charges that:

### COUNT ONE
(Perjury)

At times relevant to this Indictment,

1.      The defendant, **ROBERT FITZPATRICK**, was employed by the Federal Bureau of Investigations ("FBI") from approximately 1965 through 1986 in various capacities including that of Special Agent.

2.      In approximately late 1980, the defendant **FITZPATRICK** was assigned as an Assistant Special Agent-in-Charge ("ASAC") to the FBI's Boston Division headquartered in Boston, Massachusetts.  In that capacity, the defendant **FITZPATRICK** supervised the Boston Division's Organized Crime Squad.

3.      From approximately 1975 through 1990, James J. Bulger, a/k/a/ "Whitey," was an informant for the Boston Division's Organized Crime Squad.  Bulger was operated by John Connolly, an FBI agent assigned to the Organized Crime Squad.

1

4.      Supervising Special Agent ("SSA") John Morris supervised the Organized Crime Squad from approximately 1978 through 1982. SSA James Ring supervised the Organized Crime Squad from approximately 1983 through 1990.

5.      Lawrence Sarhatt was the Special Agent-in-Charge ("SAC") of the Boston Division from approximately 1980 through 1982. James Greenleaf was the SAC from approximately 1983 through 1986.

6.      In approximately May 1986, the defendant **FITZPATRICK** was the subject of an adverse personnel action that resulted in his demotion in pay and grade, and his reassignment to the Providence, Rhode Island FBI field office. **FITZPATRICK** resigned from the FBI shortly thereafter, effective December 1, 1986.

7.      In January 1995, James "Whitey" Bulger was indicted for racketeering and related crimes committed in connection with his operation of an organized crime group known by various names, including "the Winter Hill Gang" and "South Boston." Bulger fled the jurisdiction, became an FBI "Top Ten Fugitive," and was not apprehended until June 2011.

8.      In 1997 and 1998, hearings were conducted in federal district court regarding the relationship between Bulger and the FBI. The defendant **FITZPATRICK** testified at those hearings.

9.      In approximately November 1999, Bulger was indicted again for racketeering and related crimes including the murders of nineteen people. Much of the conduct alleged in the indictment occurred while Bulger acted as an informant for the FBI.

10.     From approximately 1999 through 2003, numerous wrongful death lawsuits were filed against the FBI and individual agents including the defendant **FITZPATRICK**.

2

Consequently, the defendant **FITZPATRICK** was deposed under oath and testified at two wrongful death trials.

11.     From approximately 1998 through the present, the defendant **FITZPATRICK** has falsely held himself out as a whistleblower who tried to end the FBI's relationship with Bulger.

12.     In approximately April 2001, the defendant **FITZPATRIC**K appeared on a *60 Minutes* segment titled, "*The FBI and the Mob*," during which he spoke about the FBI's relationship with Bulger.

13.     In approximately 2011, the defendant **FITZPATRICK** jointly authored a book titled, "*Betrayal, Whitey Bulger and the FBI Agent Who Fought To Bring Him Down*," in which he wrote about the FBI's relationship with Bulger.

14.     The trial against Bulger, captioned *United States v. James J. Bulger*, Crim No. 99-10371-DJC (hereinafter, "the Bulger trial"), commenced in June 2013.  On or about June 12, 2013, in his opening statement, counsel for Bulger stated:

> Now, James Bulger never ever, the evidence will show, was an informant for John Connolly.  The evidence will show that he was never an informant for John Connolly.  There were two reasons for this.  Number one, James Bulger is of Irish descent, and the worst thing that an Irish person could consider doing was becoming an informant because of the history of the troubles in Ireland.  And that was the first and foremost reason why James Bulger was never an informant against people.

> \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

> But as Bulger learned when he met with John Connolly, there was something else that he could provide Connolly with:  he could provide him with money, because Connolly wanted to live the lavish lifestyle, and Jim Bulger had the money to help him do so.  He wasn't paid small amounts of money.  James Bulger paid John Connolly on occasion $5,000, on other

3

> occasions $10,000, on still other occasions $50,000. He paid this money, and Connolly gladly accepted it.

****************************

> In fact, the person who became the number two FBI agent in Boston [**FITZPATRICK**] looked at the file and said, 'this person's not an informant, he's doing crimes in Boston, he shouldn't be getting any protection.' He even met with James Bulger. And he'll tell you that within ten minutes of meeting with him he realized Bulger wasn't an informant. In fact, he asked Bulger about it, and Bulger denied that he was an informant.

15.    On or about July 29, 2013, the first day that the defendant **FITZPATRICK** testified at the Bulger trial, counsel for Bulger made the following statement to the Court:

> This witness [**FITZPATRICK**] is going to be judged by his credibility, his background, his experience, his education, just like the government's witnesses when they want to propose that information to help the jury understand who he is and his life experience, and that will help them evaluate his credibility. So his upbringing, his schooling, his work with the FBI is all relevant to the FBI [corruption].

16.    On July 29 and July 30, 2013, the defendant **FITZPATRICK** testified at the Bulger trial. During the course of that testimony, **FITZPATRICK** made false material declarations designed to aid Bulger's defense. **FITZPATRICK** also made false material declarations to enhance his own credibility as a former FBI official by making false claims about his professional accomplishments as an FBI agent.

17.    On or about July 29 and July 30, 2013, within the District of Massachusetts, the defendant,

**ROBERT FITZPATRICK**,

while under oath and testifying at the Bulger trial, in federal district court in the District of Massachusetts, knowingly did make a false material declaration as set forth below. Specifically,

4

the defendant **ROBERT FITZPATRICK**, while testifying under oath, knowingly made the following declaration in response to questions with respect to matters material to the Bulger trial:

> Q.    I want to take you to Boston, 1981, in January.  When you came to Boston, what was your role coming to Boston?
>
> A.    I met with the Assistant Director.  The Assistant Director is one of the highest agents in the Bureau, there are about eight of them, and of course they report to the EAD, the Executive Administrative Director, who reports to the Director of the FBI.  That's about as high as you can go.  **I was given a sit-down by, I think, Roy McKinnon, I remember his name, and he basically told me they had problems up in Boston, major problems.  He wasn't specific, really didn't outline the entire problem, but he said they were significant, and my job was to come** –
>
> Q.    What were your objectives when you came to Boston?
>
> A.    My objectives were to stop the leakings, which were occurring in Boston.  Apparently there were people inside the FBI and outside the FBI that were leaking information, causing a lot of the investigations to go south, in other words, to get corrupted.

The declarations of the defendant **ROBERT FITZPATRICK,** which are underscored and in bold type above, as he then and there well knew and believed, were false in that the defendant **FITZPATRICK's** transfer to Boston in 1980 was a routine reassignment and he received no special instructions from Assistant Director McKinnon.

All in violation of Title 18, United States Code, Section 1623.

<u>COUNT TWO</u>
(Obstruction of Justice)

18.     Paragraphs one through sixteen of Count One are hereby re-alleged and incorporated as if fully set forth herein.

19.     On or about July 29 and July 30, 2013, within the District of Massachusetts, the defendant,

## **ROBERT FITZPATRICK**,

did corruptly endeavor to influence, obstruct, and impede the due administration of justice in that he knowingly made a false and misleading declaration as set forth above in paragraph 17 before a federal court in the District of Massachusetts, with intent to obstruct and impede the Bulger trial.

All in violation of Title 18, United States Code, Section 1503.

COUNT THREE
(Perjury)

20.     Paragraphs one through sixteen of Count One are hereby re-alleged and incorporated as if fully set forth herein.

21.     On or about July 29 and July 30, 2013, within the District of Massachusetts, the defendant,

**ROBERT FITZPATRICK,**

while under oath and testifying at the Bulger trial, in federal district court in the District of Massachusetts, knowingly did make a false material declaration as set forth below.  Specifically, the defendant **ROBERT FITZPATRICK**, while testifying under oath, knowingly made the following declaration in response to questions with respect to matters material to the Bulger trial:

> Q.     When you spoke to Mr. Bulger, what did he say about whether or not he was an informant?
>
> A.     Well, it didn't just come up that way.   It was a series of questioning, a series of information; but basically, he was not giving me any information that I was out there to try to get.  And so I made a mental reservation that this was not working, that he was not responsive to what I actually was out there to get.
>
> There's several things that he said.  One thing he said was that he was not paid.  Most informants are paid.  He made a point of the fact that he was not paid, that he, in fact, paid others.  I didn't challenge that.  He also said that he was the leader of a gang, that he was the top guy with the Winter Hill Gang.  And that resonated with me, because, you know, in the FBI, you can't have the head of a gang as an informant because then you're validating the gang, you're actually part of the management process, if you will.  Then he said he would not testify, I think, at some point.  I thought to myself, Geez, what am I doing here?  Normally you go out and you talk to an informant, he's going to testify about his actions and so forth.  **At one point, he even said he wasn't an informant.  He said, I'm not an informant.**  At that point, I just, again, made a mental reservation that, you know, what am I doing here?  What's going on here?  And there were several other situations where the elements of what he was saying automatically to me meant that I

7

was not going to validate him, if you will.  I was not going to -- I
didn't like what I was hearing, let me put it that way.

The declarations of the defendant **ROBERT FITZPATRICK,** which are underscored

and in bold type above, as he then and there well knew and believed, were false in that James J.

Bulger never denied to the defendant **ROBERT FITZPATRICK** that Bulger was an informant.

All in violation of Title 18, United States Code, Section 1623.

## COUNT FOUR
(Obstruction of Justice)

22.     Paragraphs one through sixteen of Count One are hereby re-alleged and incorporated as if fully set forth herein.

23.     On or about July 29 and July 30, 2013, within the District of Massachusetts, the defendant,

**ROBERT FITZPATRICK**,

did corruptly endeavor to influence, obstruct, and impede the due administration of justice in that he knowingly made a false and misleading declaration as set forth above in paragraph 21 before a federal court in the District of Massachusetts, with intent to obstruct and impede the Bulger trial.

All in violation of Title 18, United States Code, Section 1503.

COUNT FIVE
(Perjury)

24.      Paragraphs one through sixteen of Count One are hereby re-alleged and incorporated as if fully set forth herein.

25.      On or about July 29 and July 30, 2013, within the District of Massachusetts, the defendant

**ROBERT FITZPATRICK,**

while under oath and testifying at the Bulger trial, in federal district court in the District of Massachusetts, knowingly did make a false material declaration as set forth below. Specifically, the defendant **ROBERT FITZPATRICK**, while testifying under oath, knowingly made the following declarations in response to questions with respect to matters material to the Bulger trial:

> … And so when I got in the car and he [John Morris] started telling me, How did it turn out, you know, how did it go? And I just looked at him, you know, and I said, It didn't go well. He said, what do you mean? **I said, Well, I'm going to close him,** that means you're going to terminate him as an informant. And so Morris said, among other things, Morris turned around to me and said, No, you're not. And I got more angry.

> **\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

> Q.      **What did you do with the report trying to close Jim Bulger as an informant?**

> A.      What did I do with it?

> Q.      What did you do with it?

> A.      **I gave it to SAC Sarhatt.**

> **\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

> A.      Yes. And that's part of the problem, incidentally. Larry Sarhatt, when I first came in, was what I would call a hands-on SAC. He was involved. And obviously, so involved that he went out and

10

interviewed Mr. Bulger first, and so forth.  And so he would talk with us, talk with me particularly about the case, about the management, about what was going on.  **And so he told me at one point that Mr. Bulger was not going to be closed, that -- because I questioned the fact that he wasn't closed, and he kind of ameliorated that by saying that FBI wants him open.**

Q.    When you say "FBI wants him open," was he referring to John –

A.    Headquarters.

Q.    Headquarters?

A.    Headquarters wanted him open.

****************************

Q.    When Washington wouldn't do anything to close that file, what did you do?

A.    Well, initially, I -- remember, I said this is a quasi-military organization.      There's a fine line between insubordination, telling my superiors what to   do.  **I could make recommendations, I could express the fact that I don't like things, but I can't come right out and say close this guy**, but I can be very vocal, and I was, I could be adamant about my position, and I was.   I could explain to them that we have a problem here.

Q.    Did Washington follow your advice?

A.    No.

****************************

Q.    Why was it that headquarters didn't follow the recommendations to stop the designation?

A.    To close Bulger?

Q.    Yes.

A.    Well, that was one of the -- one of the problems that I had.  I mean, I couldn't understand, after finishing my report and outlining like I did the reasons after the interview, that it was common sense to me

11

that he should be closed according to rules and regulations and other situations.

Q.     What kind of feedback were you getting from Washington?

A.     Not good.

Q.     When you say "not good," give us a little bit of understanding.

A.     **<u>Well, there were some who didn't like the fact that I was making that proposal, to close Bulger.</u>**

The declarations of the defendant **ROBERT FITZPATRICK,** which are underscored and in bold type above, as he then and there well knew and believed, were false in that **FITZPATRICK** never advocated that James Bulger be closed as an FBI informant**.**

All in violation of Title 18, United States Code, Section 1623.

12

## COUNT SIX
### (Obstruction of Justice)

26.    Paragraphs one through sixteen of Count One are hereby re-alleged and incorporated as if fully set forth herein.

27.    On or about July 29 and July 30, 2013, within the District of Massachusetts, the defendant,

**ROBERT FITZPATRICK,**

did corruptly endeavor to influence, obstruct, and impede the due administration of justice in that he knowingly made a false and misleading declaration as set forth above in paragraph 25 before a federal court in the District of Massachusetts, with intent to obstruct and impede the Bulger trial.

All in violation of Title 18, United States Code, Section 1503.

COUNT SEVEN
(Perjury)

28.    Paragraphs one through sixteen of Count One are hereby re-alleged and incorporated as if fully set forth herein.

29.    On or about July 29 and July 30, 2013, within the District of Massachusetts, the defendant,

**ROBERT FITZPATRICK,**

while under oath and testifying at the Bulger trial, in federal district court in the District of Massachusetts, knowingly did make a false material declaration as set forth below. Specifically, the defendant **ROBERT FITZPATRICK**, while testifying under oath, knowingly made the following declaration in response to questions with respect to matters material to the Bulger trial:

> Q:    **You were reduced in grade from a 15 to a 13 because of charges related to an investigation into a shooting incident.**
>
> A:    **That's absolutely not true.**
>
> \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
>
> Q:    Why didn't you stay for three years after you put in 22 years?
>
> A:    Well, when I got down to Rhode Island, there was another corruption that ensued. The United States Attorney down there, Lindholm, called me over to his office and reported …
>
> Q.    At some point you became aware there was an investigation into corruption in Rhode Island?
>
> A.    One of the agents were being accused of being on the take….
>
> \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
>
> Q:    So what did you do?
>
> A:    I left.  I tendered my retirement or my resignation
>
> \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

14

Q.      Did you have any concerns that if you made these issues public
        there would be some retaliation?

A.      Do I feel retaliated against because of the publicity?

Q.      Sure.

A.      Of course, yes.  I feel retaliated because I reported Greenleaf for
        criminality.  I mean, that was my oath, I took an oath to do that.  It
        wasn't like I was whistle-blowing.  I went in there and wanted to
        open up a case on him, just like I would open up a case on Mr.
        Bulger.

                        ****************************

        The reason I left the FBI was because it was corrupt at that level,
        and the corruption was very much reported by me to the FBI.  I
        expected them to do something.

The declaration of the defendant **ROBERT FITZPATRICK,** which is underscored and

in bold type above, as he then and there well knew and believed, was false in that the defendant

**FITZPATRICK** was demoted due to his falsification of reports related to his investigation of a

shooting incident, not due to retaliation from SAC Greenleaf.


        All in violation of Title 18, United States Code, Section 1623.

<u>COUNT EIGHT</u>
(Obstruction of Justice)

30.    Paragraphs one through sixteen of Count One are hereby re-alleged and incorporated as if fully set forth herein.

31.    On or about July 29 and July 30, 2013, within the District of Massachusetts, the defendant,

**ROBERT FITZPATRICK,**

did corruptly endeavor to influence, obstruct, and impede the due administration of justice in that he knowingly made a false and misleading declaration as set forth above in paragraph 29 before a federal court in the District of Massachusetts, with intent to obstruct and impede the Bulger trial.

All in violation of Title 18, United States Code, Section 1503.

16

COUNT NINE
(Perjury)

32.     Paragraphs one through sixteen of Count One are hereby re-alleged and
incorporated as if fully set forth herein.

33.     On or about July 29 and July 30, 2013, within the District of Massachusetts, the
defendant,

**ROBERT FITZPATRICK,**

while under oath and testifying at the Bulger trial, in federal district court in the District of
Massachusetts, knowingly did make a false material declaration as set forth below.  Specifically,
the defendant **ROBERT FITZPATRICK**, while testifying under oath, knowingly made the
following declarations in response to questions with respect to matters material to the Bulger
trial:

> Q.     Well, in fact, at the beginning of your testimony, didn't you
> gratuitously claim credit for arresting the mob boss, Jerry Angiulo?
>
> A.     I wish I did arrest the -- **I did arrest him**.
>
> Q.     Not what you wished you did, didn't you tell this jury, 'I also
> arrested Angiulo'?
>
> A.     **I did arrest Angiulo**.
>
> Q.     Okay.  That's your testimony under oath, sir?
>
> A.     Yes.
>
> Q.     Sir, isn't it a fact that the case agent on Angiulo was Ed Quinn?
>
> A.     Yeah, he was a ride-along with me.  I was the ASAC in charge.  **I
> went to the table and put the arrest right on Angiulo.**
>
> Q.     That's a total bald-face lie, isn't it?
>
> A.     No, it's not.

17

Q.    In fact, Ed Quinn who is still alive, sir, and can testify, he's the one who arrested Gennaro Angiulo at Francesca's?

A.    Ed Quinn was my subordinate.  He could say he was there, **but the arrest was made by me**.

The declarations of the defendant **ROBERT FITZPATRICK,** which are underscored and in bold type above, as he then and there well knew and believed, were false in that the defendant **FITZPATRICK** did not arrest Jerry Angiulo**.**

All in violation of Title 18, United States Code, Section 1623.

## COUNT TEN
### (Obstruction of Justice)

34.    Paragraphs one through sixteen of Count One are hereby re-alleged and incorporated as if fully set forth herein.

35.    On or about July 29 and July 30, 2013, within the District of Massachusetts, the defendant,

**ROBERT FITZPATRICK**,

did corruptly endeavor to influence, obstruct, and impede the due administration of justice in that he knowingly made a false and misleading declaration as set forth above in paragraph 33 before a federal court in the District of Massachusetts, with intent to obstruct and impede the Bulger trial.

All in violation of Title 18, United States Code, Section 1503.

19

## COUNT ELEVEN
(Perjury)

36.     Paragraphs one through sixteen of Count One are hereby re-alleged and incorporated as if fully set forth herein.

37.     On or about July 29 and July 30, 2013, within the District of Massachusetts, the defendant,

### ROBERT FITZPATRICK,

while under oath and testifying at the Bulger trial, in federal district court in the District of Massachusetts, knowingly did make a false material declaration as set forth below. Specifically, the defendant **ROBERT FITZPATRICK**, while testifying under oath, knowingly made the following declarations in response to questions with respect to matters material to the Bulger trial:

> Q.    Now, in addition to claiming credit for the Anguilo arrest, haven't you in fact pretended that you were the one who found the rifle that killed Martin Luther King? Haven't you made that claim in the past?
>
> A.    **I found the rifle when I was at the scene. I was the first FBI agent at the scene, and I found a rifle coming down the stairs, having just missed James Earl Ray, the shooter.** The rifle was in the alcove, and there's a report to that.

****************************

> Q:    Isn't it true that three Memphis police officers found the rifle that was used to kill Martin Luther King, not Bob Fitzpatrick?
>
> A:    **I found the rifle along with them**. They could have been there, Captain Zach was there, Captain Zachary, but I'm the one that took the rifle…

************************

> **Q**:    Are you aware that this report says an Inspector Nevelyn Zachary
> took it from these cops at 6:15 and 6:30, and then he later turned
> the bundle over to the FBI three hours later?

> **A**:    **I took the bundle from the scene**.

The declarations of the defendant **ROBERT FITZPATRICK,** which are underscored and in bold type above, as he then and there well knew and believed, were false in that the defendant **FITZPATRICK** was not the first officer at the scene who recovered the weapon used to assassinate Martin Luther King**.**

All in violation of Title 18, United States Code, Section 1623.

## COUNT TWELVE
(Obstruction of Justice)

38.     Paragraphs one through sixteen of Count One are hereby re-alleged and incorporated as if fully set forth herein.

39.     On or about July 29 and July 30, 2013, within the District of Massachusetts, the defendant,

**ROBERT FITZPATRICK**,

did corruptly endeavor to influence, obstruct, and impede the due administration of justice in that he knowingly made a false and misleading declaration as set forth above in paragraph 37 before a federal court in the District of Massachusetts, with intent to obstruct and impede the Bulger trial.

All in violation of Title 18, United States Code, Section 1503.

A TRUE BILL

_____
FOREPERSON OF THE GRAND JURY

_____
ASSISTANT U.S. ATTORNEY

DISTRICT OF MASSACHUSETTS; April 28, 2015.

Returned into the District Court by the Grand Jurors and filed.

_____
DEPUTY CLERK

3:13 p.m.

4/28/15